**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**AT MEMPHIS**

| | | |
|---|---|---|
| **ACUITY, A MUTUAL INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. _____** |
| **REED & ASSOCIATES OF TN, LLC, JUSTIN MCKEE, and JACQUELYN MCKEE,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, Acuity, A Mutual Insurance Company (hereinafter referred to as "Acuity"), through counsel, and pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, states as follows for its Complaint for Declaratory Judgment:

## I. THE PARTIES

1.       Acuity is an insurance company incorporated in Wisconsin with its principal place of business in Wisconsin.  It is licensed to transact insurance business in the State of Tennessee.

2.       The defendant, Reed & Associates of TN, LLC ("Reed") is a Tennessee for-profit corporation organized under the laws of the State of Tennessee, with its principal place of business at 269 Germantown Bend CV, Suite 101, Cordova, TN  38018.

3.       The defendants, Justin McKee and Jacquelyn McKee ("the McKees"), are both residents of Shelby County, Tennessee residing at _4486 Greystone Oaks Cove S., Arlington, TN  38002.

## II.  VENUE AND JURISDICTION

4.      There presently exists an actual controversy between Acuity and Reed as to Acuity's rights, duties, and obligations under an insurance policy, based upon claims asserted in a state court action against Reed by the McKees.  A true and exact copy of the insurance policy issued to Reed is attached hereto as Exhibit 1 (and is hereinafter referred to as "the policy").  This action is brought pursuant to 28 U.S.C. § 2201, and the request of Acuity that this Court issue a declaration as to the rights, obligations, and legal relationships between it and the defendants, as established by the policy at issue in this matter, as discussed in more detail below.

5.      Jurisdiction for this action is founded upon diversity of citizenship, pursuant to 28 U.S.C. § 1332.  Acuity is a citizen of the State of Wisconsin for purposes of said statute, while Reed and the McKees are citizens and residents of Tennessee for purposes of jurisdiction.

6.      The amount in controversy between the parties exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00) as the McKees have asserted in their state court Complaint that they are entitled to a total of Four Million and No/100 Dollars ($4,000,000.00) from Reed.  The limits of insurance under the policy exceed One Million Dollars ($1,000,000.00).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 123 in that Reed and the McKees are residents of and/or have their principal place of business in Shelby County, Tennessee, and the acts and/or omissions giving rise to the submission of insurance claims under the policy referenced herein arose from injuries complained of by the McKees following the lease of property at 1419 Lee Side Cove in Cordova,

Tennessee, all within this judicial district.

### III. FACTS

8.      On March 12, 2008, the McKees leased from Reed a house at 1419 Lee Side Cove in Cordova, Tennessee.  The lease contained a purchase option, to which the McKees made additional payments.

9.      In August, 2014, the McKees alleged they discovered a significant mold infection affecting their water supply.  The McKees allege they incurred significant medical bills due to the respiratory illness caused by the mold infection, incurred multiple charges for hotel rooms, as well as additional damages.

10.     The McKees claim that when they alerted Reed to the mold infection, Reed evicted them from the property and the subsequently incurred additional expenses for moving and storage.

11.     The McKees have filed suit against Reed in the Shelby County Circuit Court under Docket No. CT-000542-15.  A true and exact copy of the Complaint filed by the McKees against Reed is attached hereto as Exhibit 2 and is hereinafter referred to as "the McKee Complaint."

12.     The McKee Complaint contains two causes of action.  The first cause of action is entitled "retaliatory conduct," and asserts that the actions of Reed were both "intentional and malicious."

13.     The second cause of action asserts a violation of Tennessee Code Annotated Section 66-28-101, et seq., which is the Uniform Residential Landlord and Tenant Act, once again asserting that the conduct of Reed was both "intentional and malicious," and "driven by a profit motive."

14.     Acuity issued Policy No. X10355 to Reed, providing coverage in accordance with policy terms and conditions, for the policy period of February 2, 2014 – February 2, 2015.

15.     Upon being served with the McKee Complaint, Reed tendered the defense to Acuity.

16.     Acuity accepted the defense under a Reservation of Rights, dated February 20, 2015 (a copy of which is attached hereto as Exhibit 3).  Acuity appointed defense counsel under reservation of rights, and is currently paying defense counsel to defend the allegations of the McKee Complaint on behalf of Reed.

17.     The insuring agreement of Section 1.A. of the Commercial General Liability Coverage form provided as follows:

**SECTION I – COVERAGES**

**COVERAGE   A   BODILY   INJURY   AND   PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for *bodily injury* or *property damage* to which this insurance does not apply.  We may, at our discretion, investigate any *occurrence* and settle any claim or *suit* that may result.  But:

   **(1)**   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   **(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance

in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.**  This insurance applies to *bodily injury* and *property damage* only if:

**(1)**  The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the "coverage territory";

**(2)**  The *bodily injury* or *property damage* occurs during the policy period; and

**(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part.  If such a listed insured or authorized *employee* knew, prior to the policy period, that the *bodily injury* or *property damage* occurred, then any continuation, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change or resumption of that *bodily injury* or *property damage* after the end of the policy period.

**d.**  *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any *employee* authorized by you to give or receive notice of an

*occurrence* or claim:

**(1)** Reports all, or any part, of the *bodily injury* or *property damage* to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage*; or

**(3)** Becomes aware by any other means that *bodily injury* or *property damage* has occurred or has begun to occur.

**e.** Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury*.

19. The policy contained the following definitions:

**3.** *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*****

**13.** *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*****

**17.** *"Property damage"* means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems and applications

software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

20.     In order for this coverage to apply, there must be covered "property damage" or "bodily injury" caused by an "occurrence."

21.     The allegations of the McKee Complaint are not covered under this insuring agreement because the McKee Complaint does not allege covered "property damage" or "bodily injury" caused by an "occurrence."

22.     The Commercial General Liability Coverage was subject to the following exclusion:

**FUNGI OR BACTERIA EXCLUSION (Endorsement CG-2167F(12-04))**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**1.**     The following exclusion is added to Paragraph 2, Exclusions of Section I - **Coverage A – Bodily Injury and Property Damage Liability:**

**Fungi or Bacteria**

**a.**     *Bodily injury* or *property damage* which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by

any insured or by any other person or entity.

This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

********

**3.**     The following definition is added to the Definitions Section:

*"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

23.     The policy also contained the following additional exclusions:

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected or Intended Injury**

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or property.

*****

**o.     Personal and Advertising Injury**

*Bodily injury* arising out of *personal and advertising injury.*

24.     The allegations and claims of the McKee Complaint are excluded by operation of one or more of the above-referenced exclusions.

25.     The policy also provided Coverage B, which applies to "personal and advertising injury" as follows:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes

legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *personal and advertising injury* to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or *suit* that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.**     This insurance applies to *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the *coverage territory* during the policy period.

26.     "Personal and advertising injury" is defined as follows:

**14.**     *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;

**b.**     Malicious prosecution;

**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or

disparages a person's or organization's goods, products or services;

**e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**     The use of another's advertising idea in your *advertisement;* or

**g.**     Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

27.     Reed takes the position that coverage exists under this provision because the McKee complaint is a complaint for "wrongful eviction."

28.     While Acuity does not agree with this characterization, Acuity asserts that this Complaint is not covered by the insuring agreement of Coverage B. In addition and/or in the alternative, Acuity asserts that one or more of the following exclusions is applicable to exclude coverage for the claims and allegations of the McKee Complaint:

**2.     Exclusions**

This insurance does not apply to:

**a.     Knowing Violation of Rights of Another**

*Personal and advertising injury* caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury.*

*****

**m.     Pollution**

*Personal and advertising injury* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants* at any time.

******

**FUNGI OR BACTERIA EXCLUSION (Endorsement CG-2167F(12-04))**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

*****

**2.**     The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverage B – Personal and Advertising Injury Liability:

**Fungi or Bacteria**

**a.**     *Personal and advertising injury* which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.**     Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

29.     For purposes of the above exclusion, the following definition is added:

*"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

30.     Therefore, there is no coverage under the Commercial General Liability portions of the policy.

31.     The policy also provided Commercial Excess Liability Coverage, once again in accordance with policy terms and conditions.

32.     Since no coverage exists under the Commercial General Liability coverage, there can be no coverage under the Commercial Excess Liability Coverage Form, which provided as follows:

### 1.    Insuring Agreement

  **a.** We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

33. In addition and/or in the alternative, even if the insuring agreement of the Commercial Excess Liability Coverage did apply, the Commercial Excess Liability Coverage also contains the following exclusions which exclude coverage for the claims and allegations of the McKee complaint:

### 2.    Exclusions

  The exclusions that apply to the *underlying insurance* apply to this insurance.

34. In addition and/or in the alternative, the Commercial Excess Liability Coverage Form contains endorsement **CU-7054(3-03)**, which adds the following exclusion:

### FUNGI OR BACTERIA EXCLUSION

The endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**1.** The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverages:

  **a.** *Injury* or damage which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**2.**     The following definition is added to the Definitions Section:

*"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

35.     Acuity alleges and avers that an actual controversy exists between it and the defendants within the meaning of 28 U.S.C. § 2201 and that this Honorable Court is vested with the power in the instant case to declare and adjudicate the rights, obligations, and duties of the parties under the policy of insurance at issue in this case and with reference to the issues raised herein.  The McKees have been joined as they may have an interest in the outcome of this Declaratory Judgment Action only.

## IV.  DECLARATORY RELIEF SOUGHT

36.     Acuity avers and alleges the policy issued to Reed with Policy No. X10355, with effective dates of February 2, 2014 – February 2, 2015, provides no insurance coverage for the allegations and alleged injuries contained in the McKee Complaint.

37.     The insuring agreement of Section 1.A. of the Commercial General Liability Coverage form provided as follows:

**SECTION I – COVERAGES**

**COVERAGE     A     BODILY     INJURY     AND     PROPERTY**

**DAMAGE LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for *bodily injury* or *property damage* to which this insurance does not apply. We may, at our discretion, investigate any *occurrence* and settle any claim or *suit* that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to *bodily injury* and *property damage* only if:

**(1)** The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the "coverage territory";

**(2)** The *bodily injury* or *property damage* occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part. If such a listed insured or authorized *employee* knew, prior to the policy period, that the *bodily*

*injury* or *property damage* occurred, then any continuation, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change or resumption of that *bodily injury* or *property damage* after the end of the policy period.

**d.**  *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim:

    **(1)**  Reports all, or any part, of the *bodily injury* or *property damage* to us or any other insurer;

    **(2)**  Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage*; or

    **(3)**  Becomes aware by any other means that *bodily injury* or *property damage* has occurred or has begun to occur.

**e.**  Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury*.

38.  The policy contained the following definitions:

**3.**  *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*\*\*

**13.** *"Occurrence"* means an accident, including continuous or

repeated exposure to substantially the same general harmful conditions.

*****

**17.**    *"Property damage"* means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

39.    In order for this coverage to apply, there must be covered "property damage" or "bodily injury" caused by an "occurrence."

40.    The allegations of the McKee Complaint are not covered under this insuring agreement because the McKee Complaint does not allege covered "property damage" or "bodily injury" caused by an "occurrence."

41.    The Commercial General Liability Coverage was subject to the following exclusion:

**FUNGI OR BACTERIA EXCLUSION (Endorsement CG-2167F(12-04))**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**1.**    The following exclusion is added to Paragraph 2,

Exclusions of Section I - **Coverage A – Bodily Injury and Property Damage Liability:**

**Fungi or Bacteria**

**a.**     *Bodily injury* or *property damage* which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

********

**3.**     The following definition is added to the Definitions Section:

*"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

42.     The policy also contained the following additional exclusions:

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected or Intended Injury**

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or

property.

*****

o.    **Personal and Advertising Injury**

*Bodily injury* arising out of *personal and advertising injury*.

43.    The allegations and claims of the McKee Complaint are excluded by operation of one or more of the above-referenced exclusions.

44.    The policy also provided Coverage B, which applies to "personal and advertising injury" as follows:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *personal and advertising injury* to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or *suit* that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** This insurance applies to *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the *coverage territory* during the policy period.

45. "Personal and advertising injury" is defined as follows:

**14.** *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your *advertisement;* or

**g.** Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

46. Reed takes the position that coverage exists under this provision because the McKee complaint is a complaint for "wrongful eviction."

47. While Acuity does not agree with this characterization, Acuity asserts that this Complaint is not covered by the insuring agreement of Coverage B. In addition and/or in the alternative, Acuity asserts that one or more of the following exclusions is applicable to exclude coverage for the claims and allegations of the McKee Complaint:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

*Personal and advertising injury* caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury.*

*****

**m.    Pollution**

*Personal and advertising injury* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants* at any time.

******

### FUNGI OR BACTERIA EXCLUSION (Endorsement CG-2167F(12-04))

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

*****

**2.**    The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverage B – Personal and Advertising Injury Liability:

**Fungi or Bacteria**

**a.**    *Personal and advertising injury* which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.**    Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

48.    For purposes of the above exclusion, the following definition is added:

*"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

49.     Therefore, there is no coverage under the Commercial General Liability portions of the policy.

50.     The policy also provided Commercial Excess Liability Coverage, once again in accordance with policy terms and conditions.

51.     Since no coverage exists under the Commercial General Liability coverage, there can be no coverage under the Commercial Excess Liability Coverage Form, which provided as follows:

**1.     Insuring Agreement**

**a.**     We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

52.     In addition and/or in the alternative, even if the insuring agreement of the Commercial Excess Liability Coverage did apply, the Commercial Excess Liability Coverage also contains the following exclusions which exclude coverage for the claims and allegations of the McKee complaint:

**2.     Exclusions**

The exclusions that apply to the *underlying insurance* apply to this insurance.

53.     In addition and/or in the alternative, the Commercial Excess Liability Coverage Form contains endorsement **CU-7054(3-03)**, which adds the following exclusion:

**FUNGI OR BACTERIA EXCLUSION**

The endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**1.**   The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverages:

   **a.**   *Injury* or damage which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.**   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**2.**   The following definition is added to the Definitions Section:

   *"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

54.   Consequently, Acuity alleges and avers there is no coverage whatsoever for any claim, injury or damage arising out of the allegations of the McKee Complaint. All such claims for injury or damage are either not covered by the policy or are excluded by the policy provisions set forth above.

55.   Accordingly, Acuity should have no obligation to continue in the defense of Reed in the McKee Complaint, and should be entitled to withdraw the defense.

**WHEREFORE**, the plaintiff, Acuity, A Mutual Insurance Company, prays as follows:

1.      That the Defendants be required to appear and answer herein;

2.      That the Court adjudicate and declare that the policy of insurance issued by Acuity to Reed provides no coverage for any claim, injury, or damage resulting from the allegations contained in the McKee Complaint;

3.      That the Court adjudicate and declare that Acuity has no obligation to continue to provide a defense to Reed in the McKee Complaint, and may withdraw its defense of Reed in the McKee Complaint; and

4.      For such further legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

  s/Parks T. Chastain_____
**PARKS T. CHASTAIN**
Registration No. 13744
**E. JASON FERRELL**
Registration No. 24425
Attorneys for Plaintiff, Acuity, A Mutual
Insurance Company

**BREWER, KRAUSE, BROOKS,
CHASTAIN & BURROW, PLLC**
P. O. Box 23890
Nashville, TN  37202-3890
(615) 256-8787, Ext. 114
DIRECT:  (615) 630-7717
pchastain@bkblaw.com

PTC:dmt