IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | | |
|---|---|---|---|
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 2:15-cv-2140-STA-cgc |
| | ) | | |
| REED & ASSOCIATES OF TN, LLC, JUSTIN MCKEE, and JACQUELYN MCKEE | ) ) ) | | |
| | ) | | |
| Defendant. | ) | | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING THE DUTY TO DEFEND**

Before the Court is Plaintiff Acuity's Motion for Summary Judgment, filed June 4, 2015. (ECF No. 30). Acuity seeks summary judgment and two declarations: (1) that its policy of insurance provides no coverage to Defendant Reed & Associates, LLC ("Reed") for any claim, injury, or damage resulting from the allegations contained in a state-court complaint filed by Justin and Jacquelyn McKee; and (2) that Acuity thus has no obligation to continue to provide a defense to Reed in the underlying action. Reed filed a response in opposition and a cross-motion for summary judgment on the same issues—which constitute the entire dispute—on July 2, 2015. (ECF No. 35). Acuity filed its response to the cross-motion and its reply to Reed's response on July 16, 2015. (ECF No. 39). Reed filed no reply. For the reasons set forth below, Acuity's Motion for Summary Judgment is **DENIED**, and Reed's cross-motion is **GRANTED**, but only as they relate to Acuity's duty to defend. Any request for a declaration regarding indemnification is not ripe.

1

## BACKGROUND

The McKees filed suit against Reed in the Shelby County Circuit Court under Docket No. CT-000542-15. (Pl.'s Statement of Undisputed Facts ¶ 1, ECF No. 30). The McKees' Complaint alleges that they suffered injuries as a result of a mold infestation at the house they rented from Reed in Cordova, Tennessee. (*Id.* ¶ 2). They allege two counts: (1) Reed violated the Uniform Residential Landlord and Tenant Act (URLTA) when it evicted the McKees as retaliation for their complaints about a mold infestation; and (2) Reed violated URLTA by failing to comply with building and housing codes, failing to make repairs and keep the premises fit, and failing to keep common areas in a clean and safe condition.[1] (McKee Complaint ¶¶ 13–31, ECF No. 1-2). As a result, the McKees allege they incurred medical bills, hotel bills, moving expenses, and other monetary loss, and suffered pain and suffering. (*Id.* ¶¶ 28–32).

After service of the McKee Complaint, Reed tendered the defense to Acuity, Reed's insurer, which accepted the defense under a reservation of rights. (Pl.'s Statement of Undisputed Facts ¶ 5–7). Acuity is currently paying counsel to defend the allegations of the McKee Complaint on behalf of Reed. (*Id.* ¶ 7). Believing that the policy does not cover the claims alleged by the McKees against Reed, Acuity filed this action seeking a declaratory judgment that the policy does not contain the coverage at issue and that Acuity may therefore cease its defense. Reed responded and filed its cross-motion contending that the policy does cover the claims alleged and that Acuity's duty to defend has been triggered by the allegations in the Complaint.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and

---

[1] *See* Tenn. Code Ann. § 66-28-304(a)(1)–(3), -514.

the movant is entitled to judgment as a matter of law."[2] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[3] and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[8] In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[9] The Court must enter summary judgment "against a party who fails to make a

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex*, 477 U.S. at 324.

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id.* at 251–52.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

**DISCUSSION**

The parties' cross-motions for summary judgment require the Court to construe the policy that Acuity issued to Reed. The parties agree that the insurance policy governs the dispute and that Tennessee law applies. The ultimate question of indemnification is not before the Court; rather, the Court must determine whether the McKees' claims arguably fall within the coverage provided by the policy and thus whether Acuity's duty to defend—not its duty to indemnify—has been triggered.

**I. Standards and Interpretation**

**A. Duty to Defend versus Indemnification**

The duty to defend is broader than the duty to indemnify "because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact."[11] In other words, "the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery."[12] As Reed points out, "[i]f even one of the allegations is covered

---

[10] *Celotex*, 477 U.S. at 322.

[11] *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305 (Tenn. Ct. App. 2007). As discussed below, no jury has found facts in the underlying case, and therefore the Court makes no determination of indemnification.

[12] *Id.*; *see also Gen. Ins. Agents Ins. Co. of Am., Inc. v. Mandrill Corp.*, 243 F. App'x 961, 966 n.1 (6th Cir. 2007) ("While Tennessee law mandates that the duty to defend attaches based on the allegations in the complaint, that duty ends when the insurer ascertains that the actual facts fall within an exclusion.").

4

by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy."[13] Under Tennessee law, "[q]uestions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured."[14] Moreover, "any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured."[15]

The Court's task at this stage, then, is simply to determine whether Acuity has a duty to defend based on the allegations in the McKee Complaint. If the policy "arguably, as opposed to distinctly, covers the claims being made," then the insurer's duty to defend is triggered.[16] That duty continues "until the facts and the law establish that the claimed loss is not covered."[17] In other words, a determination that Acuity owes a duty to defend does not ultimately determine whether coverage exists or for which claims coverage exists. With these principles in mind, the Court must look to the allegations of the complaint to determine whether the damages alleged are arguably within the risk covered by the insurance policy. If they are, Acuity has a duty to defend. The parties agree that Tennessee law applies, and therefore the court interprets the policy under Tennessee's rules of interpretation.

---

[13] *York v. Vulcan Materials*, 63 S.W.3d 384, 388 (Tenn. Ct. App. 2001) (citing *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W. 2d 471, 480 (Tenn. Ct. App. 1996); *see Travelers Indem. Co. of Am.*, 216 S.W.3d at 305.

[14] *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998).

[15] *Travelers Indem. Co. of Am.*, 216 S.W.3d at 305.

[16] *Standard Fire Ins. Co.*, 972 S.W.2d at 11.

[17] *Id.*

### B. Contract Interpretation

Generally, under Tennessee law, insurance contracts are subject to the same rules of interpretation that apply to any contract.[18] The Court must interpret and enforce the contract "as written," giving each term of the contract its plain and ordinary meaning.[19] Above all, "[i]n 'resolving disputes concerning contract interpretation, [the Court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language.'"[20] The first inquiry is whether the language of the contract is ambiguous.[21] Neither party claims that the contract is ambiguous, and the Court finds no ambiguity. The plain meaning controls.

## II. Structure of the Insurance Contract

The policy first contains a General Commercial Liability Coverage Form, which provides the primary coverage. This general policy "sets the outer limits of an insurer's contractual liability," and "[i]f coverage cannot be found in the insuring agreement, it will not be found

---

[18] *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386–87 (Tenn. 2009).

[19] *Id.*

[20] *Planters Gin. Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890–91 (Tenn. 2002) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).

[21] *Id.* at 890.

elsewhere in the policy."[22] Like most insurance policies, the one before the Court also contains certain exclusions from the general policy. These exclusions "reduce[] coverage and operate[] independently with reference to the insuring agreement."[23] The exclusions "should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose."[24] Furthermore, "[o]nce an insurer has established that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion."[25]

The policy before the Court also includes "Commercial Excess Liability Coverage," which provides that Acuity will pay sums

> in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.[26]

In other words, the excess policy only applies to provide a higher monetary limit to certain claims covered in the "underlying insurance," which is defined as "the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance in the Declarations."[27] The excess policy does not provide new coverage: the only listed "underlying

---

[22] *Standard Fire Ins. Co.*, 972 S.W.2d at 7.

[23] *Id.* at 8.

[24] *Id.*

[25] *Id..*

[26] Commercial Excess Liability Coverage Form § I, ¶ 1(a), ECF No. 1-1, PageID 60.

[27] *Id.* § IV, ¶ 7, PageID 65.

7

insurance" is the Commercial General Liability Coverage policy. The Court must analyze the general policy to determine if coverage applies to the claims alleged in the McKee complaint. If allegations give rise to coverage, Acuity must defend.

### III. Coverage and the Duty to Defend

Reed claims that the McKee allegations trigger a duty to defend under two "coverages" in the policy. Under "Coverage A," Acuity provides insurance for "bodily injury" and "property damage," both defined terms. Acuity has "the right and duty to defend the insured against any *suit* seeking those damages [because of bodily injury or property damage]. However, [Acuity] will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property* damage to which this Insurance does not apply."[28] "Coverage B" contains the same duty-to-defend language, but this time for "damages because of *personal and advertising injury* to which this insurance applies."[29] "Personal and advertising injury" is also a defined term.

Whether Acuity must defend hinges on whether coverage exists for the claims alleged in the McKees' Complaint. The Complaint, taken as a whole, alleges two general claims: (1) that Reed is responsible for non-medical damages suffered as a result of Reed's alleged wrongful eviction of the McKees; and (2) that Reed is responsible for bodily injuries suffered as a result of mold infestation. Thus, the Court analyzes whether the insurance policy arguably covers these claims, and therefore whether Acuity owes a duty to defend under the insurance policy.

#### A. Eviction Claims

---

[28] General Commercial Liability Coverage Form § I, Coverage A, ¶ 1(a), PageID 30.

[29] *Id.* § I, Coverage B, ¶ 1(a), PageID 34.

Acuity first argues that the McKee Complaint does not state a claim covered by Coverage A of the insurance contract. Coverage A provides that "insurance applies to *bodily injury* and *property damage* only if: (1) The *bodily injury* or *property damage* is caused by an occurrence that takes place in the coverage territory."[30] Reed argues that the McKees' allegation of retaliatory eviction is not an "occurrence" under the policy, which provides that "'*Occurrence*' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[31] Thus, Reed argues, "[e]victing the McKee's [sic] from the property was not accidental, and was not alleged to result in 'physical injury to tangible property' or 'bodily injury, sickness or disease' sustained by either of the McKees."[32] In other words, not only was eviction not an occurrence under the policy, but the McKeees did not sustain "bodily injury, sickness or disease" as required for coverage under Coverage A.

The Court agrees that the McKees' allegation of retaliatory eviction does not include damages covered by Coverage A, which only provides coverage for bodily injury and property damage. The only stated damages suffered as a result of retaliatory eviction were "unnecessary expenses for moving and storage" and lost money that the McKees "had paid toward the purchase option of their house." Under the policy's definitions of "bodily injury" and "property damage," the McKees' alleged damages do not give rise to coverage under Coverage A.

### B. Mold Claims

---

[30] *Id.* § I, Coverage A, ¶ 1(b)(1), PageID 30.

[31] *Id.* § V, Definitions, ¶ 13, PageID 43.

[32] Acuity's Mem. in Supp. Mot. Summ. J. 12, ECF No. 31.

The McKees do allege "bodily injury" as a result of the mold infestation: "The McKees incurred significant medical bills due to respiratory illness cause by the mold infection."[33] The McKees allege that the "mold infection" "affect[ed] their water supply."[34] Acuity first argues that these damages were not caused by an "occurrence," but it states that even assuming the injuries were caused by an "occurrence," Coverage A's "Fungi or Bacteria Exclusion" applies to exclude coverage.

### 1. "Occurrence"

An "occurrence" under the policy "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[35] The McKees do not allege that the presence of mold was intentional; the only intentional conduct alleged relates to their eviction claim. Under the plain language of the policy, mold exposure fits within the definition of occurrence—"continuous or repeated exposure to substantially the same general harmful conditions."

### 2. Mold Exclusion and Exception to the Exclusion

The Fungi or Bacteria Exclusion ("mold exclusion"), however, precludes coverage for bodily injury or property damage under Coverage A when the damage occurred as a result of mold inhalation or ingestion:

---

[33] McKee Compl. ¶ 14, ECF No. 1-2; *see also id.* ¶ 29 ("Reed's Violation of [URLTA] caused the McKees to suffer unnecessary pain and suffering.").

[34] *Id.* ¶ 13.

[35] General Commercial Liability Coverage Form § V, Definitions, ¶ 13, PageID 43. Acuity asserts that the McKee Complaint does not allege an "accident." While this may be true of the eviction claim, it is not true of the mold-related bodily-injury claims. The McKee Complaint does not assert that the mold infestation was intentional, but that after being notified of the problem, Reed's decision to evict the McKees was intentional. The McKees' exposure to mold, as alleged, was not expected or foreseeable; therefore, it was an "accident" under the policy.

> **Fungi or Bacteria**
>
> > a.  *Bodily injury* or *property* which would not have occurred, in whole or in part, but for the actual alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
> > b.  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.
> >
> > This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.[36]

The exclusion defines "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."[37]

At first glance, the mold exclusion appears to do away with coverage for claims of bodily injury stemming from mold exposure. Reed argues, however, that the carry-out language—stating that the exclusion does not apply to fungi contained in a good or product—means that the McKees' alleged damages are covered by the policy. Reed notes that neither "good" nor "product" is defined in the policy but asserts that under its plain meaning, water is a "good or product intended for bodily consumption."

In its reply, Acuity posits that Reed's entire response in opposition is based on application of Coverage B, which requires a different analysis because it covers claims of personal and advertising injury, not bodily injury. Thus, Acuity states that Reed has failed to

---

[36] Fungi or Bacteria Exclusion Endorsement ¶ 1, PageID 54.

[37] *Id.* ¶ 3.

carry its initial burden of showing, by a preponderance of the evidence, that *bodily injury* resulting from the mold infestation falls within the policy under Coverage A. Indeed, Reed's disjointed response, which contains only two pages of substantive rebuttals, makes difficult the task of responding and ruling. Reed failed to distinguish its arguments under Coverages A and B. Reed's discussion of the mold exclusion and its exception subsequent to Reed's analysis of "personal and advertising injury" under Coverage B left Acuity understandably believing that Reed's response was based entirely on Coverage B. In its reply, Acuity addressed the mold exclusion as it relates to Coverage B but never proffered an interpretation of the exception to the mold exclusion, which clearly applies to Coverage A and appears to be implicated here.

Despite Reed's inartful and scant response, the Court must construe the policy before it in light of the McKees' allegations. The McKee Complaint clearly alleges bodily injury as a result of a mold infestation affecting the water in the home. And the Court cannot ignore the "exception" to the mold exclusion, which provides that the exclusion does not apply to preclude coverage for bodily injury suffered as a result of "any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption."[38] Although erroneously referring to Coverage B, Reed implicated the exception.

Other federal courts have construed the same language—"fungi or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption"—and held that water constitutes a "good" or "product." One district court found the reasoning of Northern District of Georgia persuasive:

> In [*Nationwide Mutual Fire Insurance Co. v.*] *Dillard House*, water in a hotel hot tub from which a bather allegedly contracted Legionnaires' disease was found to be "a good or product intended

---
[38] *Id.* ¶ 1.

> for bodily consumption" under the same Consumption Exception at issue here. [*Nationwide Mutual Fire Insurance Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1370, 1379 (N.D. Ga. 2009)]. At the outset, the court determined that bathing water in a hotel hot tub is a good, and there is no basis for deviating from that reasoning here. *Id*. at 1376 n.12. The term "good" plainly means "something that has economic utility or satisfies an economic want." *Id*. (quotations omitted). Like the hot tub water in *Dillard House*, the vaporized spa tub and shower water at issue in [the two underlying suits] has economic utility, as water is integral to a functioning spa tub or shower. *Id*. Thus, the spa tub and shower water referenced in the [the underlying suits] is a "good."[39]

That court also found that the water in the spa tub and shower at issue was "intended for bodily consumption." Again relying on *Dillard House*, the court reasoned that "consumption" is "the utilization of economic goods in the satisfaction of wants," and the claimant hotel guests consumed the good—water—when using the spa tub and shower.[40] If water in a spa tub and a shower is considered a good intended for consumption, it follows that water in a rented house, some of which will be ingested by drinking and bathing, is intended for consumption. Therefore, the exception to the mold exclusion applies in this case to provide coverage over the McKees' allegation that the suffered bodily injury as a result of mold in the water supply.[41]

## IV. No Ruling on Indemnification

---

[39] *Westport Ins. Corp. v. VN Hotel Group, LLC*, 761 F. Supp. 2d 1337, 1346–1347 (M.D. Fla. 2010).

[40] *Id.* at 1347 (internal quotation marks omitted) (citing *Nationwide Mutual Fire Insurance Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1378 (N.D. Ga. 2009)).

[41] Acuity briefly attempts to implicate the "pollutant" exclusion. *See* General Commercial Liability Coverage Form § I, Coverage A, ¶ 2(f), PageID 31. But "'*Pollutants*' means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* § V, Definitions, ¶ 15, PageID 43. "Mold," on the other hand, is specifically included in the definition of "fungi." *See* Fungi or Bacteria Exclusion Endorsement ¶ 3, PageID 54. Therefore, mold is not a "pollutant" but rather a "fungus." If mold were considered a "pollutant," it would render mold's inclusion in the definition of "fungi" meaningless. *See Westport Ins. Corp. v. VN Hotel Group, LLC*, 513 F. App'x 927, 932 (11th Cir. 2013).

13

Having determined that the policy arguably provides coverage for one of the McKees' allegations—namely, the mold-related claims stemming from Reed's non-compliance with Tennessee Code Annotated section 66-28-304—Acuity has a duty to defend under Coverage A.[42] The Court need not address any request for declaratory judgment on the ultimate issue of indemnification. That determination would be premature because the Court does not know the merits of the underlying claim. The McKees' alleged facts are reliable for a duty-to-defend analysis, but they are not actual facts upon which this Court could resolve a question of indemnification. The Tennessee Supreme Court affirmed that

> "it is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured. This situation will occur when trial on the merits of the underlying claim proves the facts to be otherwise then as alleged, and judgment is entered on a ground dissimilar to the one contained in the complaint."[43]

Moreover, in this case, if some of the alleged injuries are not covered by the insurance policy, Acuity will not be responsible for indemnification.

## **CONCLUSION**

In light of the above, Acuity's Motion for Summary Judgment is **DENIED**, and Reed's Cross-Motion is **GRANTED**—but only as they relate to the duty to defend. The Court's sole declaration is that Acuity has a duty to defend Reed; it makes no determination of indemnity, which is not a ripe issue. Any request for a declaration regarding the duty to indemnify is denied

---

[42] *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305 (Tenn. Ct. App. 2007) ("The duty to defend arises if even one of the allegations is covered by the policy."). The Court makes no ruling as to Coverage B.

[43] *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (quotation marks omitted) (quoting *Am. Policy Holders Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 250 (Me. 1977)).

14

without prejudice to reassertion after the claims in the underlying suit are resolved.  The case is dismissed.

    **IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                              HON. S. THOMAS ANDERSON
                                              UNITED STATES DISTRICT COURT

                                              Date: August 19, 2015.